UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SHATASIA TISDALE,

                    Plaintiff,

            -against-

THE CITY OF NEW YORK, POLICE OFFICER DIANE BOWMAN, POLICE OFFICER JEAN AUJLA, and JOHN/JANE DOE # 1 - 10,

                    Defendants.
------------------------------------------------------------------x

**COMPLAINT**

CV 13-2288

JURY TRIAL DEMANDED

BLOCK, J.

REYES, M.J

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Shataisa Tisdale ("Plaintiff" or "Ms. Tisdale"), an African-American female, is a resident of the County of Queens, City of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Police Officer Diane Bowman ("Bowman") was an officer, employee, and agent of Defendant The City of New York.

11. At all times relevant herein, Defendant Bowman was acting within the scope of his employment with Defendant The City of New York.

12. At all times relevant herein, Defendant Bowman was acting under color of state law.

13. Defendant Bowman is sued in his individual and official capacities.

14. At all times relevant herein, Defendant Police Officer Jean Aujla ("Aujla") was an officer, employee, and agent of Defendant The City of New York.

15. At all times relevant herein, Defendant Aujla was acting within the scope of his employment with Defendant The City of New York.

16. At all times relevant herein, Defendant Aujla was acting under color of state law.

17. Defendant Aujla is sued in his individual and official capacities.

18. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were supervisors, officers, employees, and/or agents of Defendant The City of New York.

19. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting within the scope of their employment with Defendant The City of New York.

20. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting under color of state law.

21. Defendants John/Jane Doe # 1 - 10 are sued in their individual and official capacities.

22. The names John/Jane Doe # 1 - 10 are fictitious, their true names being unknown to Plaintiff at this time.

## STATEMENT OF FACTS

23. On September 8, 2012, Ms. Tisdale was lawfully present at the apartment complex located at 141 Beach 56th Street, Far Rockaway, New York, in the County of Queens ("Subject Location").

24. Ms. Tisdale lives in an apartment in the apartment complex.

25. The common areas and grounds of the apartment complex are for the use of the residents of the apartment complex.

26. Ms. Tisdale was with several friends, when the individual defendants approached Ms. Tisdale and her friends.

27. The individual defendants called Ms. Tisdale and her friends "animals" and told them to leave the complex.

28. Ms. Tisdale and others told the individual defendants that they had leases and lived in the complex.

29. The individual defendants said that they did not care and that if everyone did not leave, they would be arrested.

30. The individual defendants proceeded to arrest several individuals, including Ms. Tisdale.

31. Ms. Tisdale's arrest was without probable cause.

32. The individual defendants bent Ms. Tisdale's wrists into a painful position and purposefully placed the handcuffs on her wrists tightly, causing Ms. Tisdale pain.

33. Ms. Tisdale pleaded with the individual defendants to loosen her handcuffs, but they refused to.

34. Ms. Tisdale's arrest was approved at the Subject Location by Defendant John/Jane Doe # 10.

35. The individual officers threw Ms. Tisdale into the back of a police car, purposefully elbowing her in the left eye in the process.

36. Ms. Tisdale was then transported to a police precinct where she was taken into the portion of the precinct that housed male prisoners in holding cells.

37. It was in that area that Ms. Tisdale was strip and body cavity searched by John/Jane Doe # 9 as four to five male arrestees watched in the holding cells. One of these arrestees pulled out his penis from his pants several times as he watched Ms. Tisdale being strip and body cavity searched.

38. Ms. Tisdale had no contraband on her person, and Ms. Tisdale had done nothing to give the individual defendants reasonable suspicion or probable cause to conduct the strip and body cavity search.

39. Thereafter, Ms. Tisdale was then transported to Queens Central Booking.

40. At Queens Central Booking, the individual defendants threw Ms. Tisdale against a bench, causing her injury.

41. Ms. Tisdale was also cuffed to the bench in a manner which caused her injury to her wrists. Ms. Tisdale pleaded with the individual defendants to change the manner in which she was cuffed, but they refused.

42. The individual defendants spoke with the Queens County District Attorneys' Office, individually and collectively lying to the Queens County District Attorney's Office that Ms. Tisdale had violated New York Penal Law §§ 195.05, 240.20(3), and 240.20(6).

43. Based on these fabricated allegations, the Queens County District Attorney's Office forwarded to Defendant Bowman a Criminal Court Complaint.

44. The Criminal Court Complaint was reviewed and signed by Defendant Bowman.

45. When reviewing and signing the Criminal Court Complaint, Defendant Bowman knew the allegations contained therein to be false.

46. The executed Criminal Court Complaint was then forwarded by Defendant Bowman to the Queens County District Attorney's Office.

47. Defendant Aujla also prepared a Supporting Deposition for the Queens County District Attorney's Office.

48. When preparing and signing the Supporting Deposition, Defendant Aujla knew the allegations contained therein to be false.

49. The executed Supporting Deposition was then forwarded by Defendant Aujla to the Queens County District Attorney's Office.

50. Legal process was issued against Ms. Tisdale, and Ms. Tisdale was subsequently arraigned.

51. During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the Queens County District Attorney's Office, *inter alia*, arrest reports, complaint reports, property vouchers, Criminal Court Complaints, and Supporting Depositions.

52. Ms. Tisdale suffered damage as a result of Defendants' actions. Ms. Tisdale was deprived of liberty, suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983*

53. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

54. Defendants, by their conduct toward Ms. Tisdale as alleged herein, violated Ms. Tisdale's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

55. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

56. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

57. The individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Ms. Tisdale without reasonable suspicion.

58. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
*False Arrest*

59. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

60. The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Ms. Tisdale without probable cause.

61. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
*Excessive Force*

62. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

63. Defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Ms. Tisdale.

64. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
### *Denial of Substantive Due Process*

65. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

66. The individual defendants created false evidence against Ms. Tisdale.

67. The individual defendants forwarded false evidence to prosecutors in the Queens County District Attorney's Office.

68. In creating false evidence against Ms. Tisdale, and in forwarding false evidence to prosecutors, the individual defendants violated Ms. Tisdale's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

69. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## SIXTH CAUSE OF ACTION
### *Malicious Abuse of Process*

70. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

71. The individual defendants issued and/or caused to be issued legal process to place Ms. Tisdale under arrest.

72. The individual defendants arrested Ms. Tisdale in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of her.

73. The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the Queens and continuing to participate in the prosecution of Ms. Tisdale.

74. The individual defendants acted with intent to do harm to Ms. Tisdale without excuse or justification.

75. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## SEVENTH CAUSE OF ACTION
### *Malicious Prosecution*

76. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

77. Defendants Bowman and Aujla initiated the criminal proceedings against Ms. Tisdale by issuing and/or causing to be issued legal process against Ms. Tisdale.

78. Defendants Bowman and Aujla lacked probable cause to commence the criminal proceedings against Ms. Tisdale.

79. Defendant Bowman's and Defendant Aujla's actions were motivated by actual malice.

80. The criminal proceeding was terminated in Ms. Tisdale's favor.

81. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

### EIGHTH CAUSE OF ACTION
*Failure to Intervene*

82. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

83. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

84. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

85. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

### NINTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

86. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

87. The Defendants jointly participated in the deprivation of Ms. Tisdale's constitutional rights as set forth herein.

88. The Defendants conspired together and with members of the Queens County District Attorney's Office in the deprivation of Ms. Tisdale's constitutional rights by collectively lying about Ms. Tisdale's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support the Defendants' fabricated version of the events.

89. As a result of the Defendants' malicious efforts to damage Ms. Tisdale, Ms. Tisdale's liberty was restricted, and Ms. Tisdale was restrained, subjected to handcuffing, and, among other things, falsely arrested, strip searched, and prosecuted.

90. As a direct and proximate result of this unlawful conduct, Ms. Tisdale sustained the damages herein alleged.

## TENTH CAUSE OF ACTION
### *Section 12132 of the Americans with Disabilities Act of 1990, As Amended ("ADA")*

91. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

92. Ms. Tisdale suffers from a learning disability and speech impairment. Accordingly, Ms. Tisdale qualifies as a person with an impairment that substantially limits one or more of major life activities. Ms. Tisdale's condition therefore constitutes a protected disability under the ADA.

93. The above-described conduct amounts to discrimination against Ms. Tisdale as it violates Section 12132, which states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

94. Pursuant to Section 12121, Defendant The City of New York is a "public entity" subject to the provisions of the ADA.

95. Defendant The City of New York's, through its employees and agents, intentional or otherwise deliberate refusal to accommodate Ms. Tisdale's needs, in light of their knowledge of Ms. Tisdale's physical conditions, violated the ADA.

96. Instead of accommodating Ms. Tisdale's needs, Defendant The City of New York, through its employees and agents, denied Ms. Tisdale services and programs available to others that could have prevented this miscarriage of justice, as well as Ms. Tisdale's pain and suffering.

97. The failure to accommodate Ms. Tisdale's disabilities was intentional and/or deliberately indifferent to Ms. Tisdale's rights under Chapter 126 of the ADA and was the proximate cause of their injuries.

98. As a consequence of Defendant The City of New York's discriminatory treatment and lack of accommodation, Ms. Tisdale suffered serious injuries. Ms. Tisdale is, thus, entitled to damages.

## ELEVENTH CAUSE OF ACTION
### § 504 of the Rehabilitation Act

99. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

100. Ms. Tisdale qualifies as a person with an impairment that substantially limits one or more major life activities. Ms. Tisdale's disability, therefore, constitutes a protected disability under the Rehabilitation Act.

101. Defendant The City of New York's intentional refusal to accommodate Ms. Tisdale's mental and physical conditions was tantamount to a denial of services and programs available to others that could have prevented this miscarriage of justice, as well as Ms. Tisdale's

pain and suffering. The failure to accommodate the foregoing disabilities was intentional and/or deliberately indifferent to Ms. Tisdale's rights under § 504 of the Rehabilitation Act, and bore a causal link to Ms. Tisdale's subsequent injuries.

102. As a consequence of Defendant The City of New York's discriminatory treatment and lack of accommodation, Ms. Tisdale suffered serious injuries and is entitled to damages.

## TWELFTH CAUSE OF ACTION
### *Equal Protection Clause under 42 U.S.C. § 1983*

103. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

104. The Defendants' conduct was tantamount to discrimination against Ms. Tisdale based on both her disabilities and ethnicity. Other individuals who are not speech impaired, learning disabled, and/or African-American are not, *inter alia*, falsely arrested and strip searched. This disparate treatment caused Ms. Tisdale to suffer serious injuries.

105. As a result of the foregoing, Ms. Tisdale was deprived of rights under the Equal Protection Clause of the Constitution of the United States, and are thereby entitled to damages.

## THIRTEENTH CAUSE OF ACTION
### *Monell*

106. Ms. Tisdale repeats and realleges each and every allegation as if fully set forth herein.

107. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Ms. Tisdale.

108. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

109. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

110. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

111. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

112. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

113. Active officers are given promotion opportunities that are not afforded to inactive officers.

114. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

115. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

116. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk

appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

117. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

118. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

119. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

120. Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

121. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

122. These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

123. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

124. As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

125. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

126. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

127. These policies, practices, and customs were the moving force behind Ms. Tisdale's injuries.

### PRAYER FOR RELIEF

**WHEREFORE**, Ms. Tisdale respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 15, 2013

*[signature]*

Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
244 5th Avenue, Suite G247
New York, NY
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com